[No. A060955. First Dist., Div. Three. Apr. 8, 1994.]

PONDEROSA HOMES, INC., Plaintiff and Appellant, v.
CITY OF SAN RAMON et al., Defendants and Respondents.

## Counsel

Hugh L. Isola, Russell J. Hanlon, Thomas P. Murphy and Berliner Cohen for Plaintiff and Appellant.

Byron Athan, City Attorney, Matteoni, Saxe & Nanda and Allan R. Saxe for Defendants and Respondents.

## Opinion

MERRILL, J.—Ponderosa Homes, Inc. (Ponderosa), appeals from a judgment in favor of respondents, the City of San Ramon (the City) and the San Ramon City Council (the City Council), entered upon the granting of respondents' motion for judgment on the pleadings. The issues raised on the motion and on this appeal are the date upon which the applicable statute of limitations commenced running, and which statute of limitations is applicable to each cause of action. Ponderosa contends that no statute of limitations had run, and therefore the trial court erred in granting the motion for judgment on the pleadings. We disagree and therefore affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the pleadings and the stipulation of agreed facts submitted by the parties.

On April 26, 1988, the City Council granted Ponderosa tentative subdivision map approval for a 452-unit residential development. In connection with this tentative subdivision map approval, the City imposed a number of conditions. As relevant to this case, these conditions included (1) a requirement that Ponderosa improve and widen Dougherty Road, with City reimbursement through "Traffic Mitigation Fee" credits for up to $584,000 in costs associated with upgrading the road to "modern arterial standards"; and (2) a requirement that Ponderosa pay, among other fees, a traffic mitigation fee of $3,200 per residential unit "upon submittal of plans or issuance of permits."

At the time it approved Ponderosa's tentative subdivision map, the City had a dual traffic mitigation fee which required payment of $3,200 per unit for projects such as Ponderosa's, located in the Dougherty and Tassajara Valleys, but only $1,500 per unit for projects elsewhere in the City. On July 26, 1988, the City Council replaced this dual traffic mitigation fee arrangement with a single city-wide fee of $2,177 per unit. Ponderosa did not object to imposition of the $3,200 traffic mitigation fee at the time of the tentative subdivision map approval.

The City Council granted Ponderosa final subdivision map approval for its project in phases. The City approved the first phase on October 26, 1988, for 77 lots; and the second phase on July 31, 1989, for 57 lots. Traffic impact fees attributable to the first two phased final maps in the amounts of $246,400 and $182,400, respectively, were credited against the work required of Ponderosa in upgrading Dougherty Road. These amounts represented payment of the traffic mitigation fee of $3,200 per unit multiplied by the number of units finally approved.

On October 6, 1989, Davidon Five Star Corp. (Davidon), a competing developer of another residential subdivision across the road from Ponderosa's development, filed a petition for writ of mandamus and complaint for declaratory relief in superior court (Davidon Five Star Corp. v. The City of San Ramon et al. (Super. Ct. Contra Costa County, 1989, No. C89-04200)). Davidon's action challenged the City's imposition of the $3,200 fee to its project, asserting that the fee was void as an illegal special tax and violated the due process and takings clauses of the United States and California Constitutions. At the time the City gave tentative subdivision map approval

for Davidon's project, the City's traffic mitigation fee in effect was $2,117. Following a ruling by the superior court on October 22, 1990, that the City's imposition of the $3,200 fee on Davidon was unlawful, the parties to that action entered into a settlement agreement and a stipulation for entry of judgment setting the traffic impact fee at $2,117 per residential unit.

On June 25, 1991, the City gave final subdivision map approval to the third phase of Ponderosa's project, consisting of 44 lots. In compliance with the condition imposed at the time of tentative subdivision map approval, Ponderosa paid a traffic impact fee in the total amount of $140,800, based on the formula of $3,200 per unit. For the first time, Ponderosa lodged an objection to payment of the $3,200 traffic mitigation fee. Thereafter, Ponderosa paid all further installments of the traffic mitigation fee under protest, in accordance with the provisions of Government Code sections 66020 and 66021.[1]

On December 4, 1991, Ponderosa filed the petition and complaint in this case, challenging the $3,200 per unit traffic mitigation fee, and seeking injunctive relief, a refund of fees paid under protest, and damages for inverse condemnation and alleged violation of its civil rights. Each cause of action in Ponderosa's complaint set forth a different legal theory for challenging the traffic mitigation fee.

The first cause of action sought a declaration that the fee was an illegal tax in excess of the reasonable cost of providing traffic improvements, in violation of both the provisions of the Government Code providing authority to impose special taxes, and article XIII of the California Constitution. The third cause of action alleged that the City's imposition of the $3,200 traffic mitigation fee constituted a taking of property without due process of law and an inverse condemnation without just compensation.[2] In the fourth cause of action, Ponderosa alleged deprivation of its civil rights under 42 United States Code section 1983. The fifth cause of action sought a refund pursuant to sections 66020 and 66021 of fees paid under protest, alleging that the City had failed to identify the public facilities for which the fee was charged, and had failed to show any relationship between the need for traffic improvements, the amount of the fee, the uses to which it would be put, and the cost of public improvements attributable to Ponderosa's development. Finally, the sixth cause of action sought a writ of mandate or prohibition preventing the imposition of the traffic mitigation fees.

On November 5, 1992, Ponderosa filed a motion for summary adjudication in its favor. The trial court denied Ponderosa's motion on the grounds

---

[1]All further statutory references are to the Government Code unless otherwise indicated.
[2]The second cause of action was settled by the parties prior to this appeal.

that it had failed to overcome the City's affirmative defenses based on the running of the statute of limitations as to each cause of action. The court found that the applicable limitation period as to each cause of action commenced on April 26, 1988, upon tentative subdivision map approval; and that Ponderosa had thereafter failed to timely file its petition and complaint.

The City gave Ponderosa written notice of its intent to make an oral motion for judgment on the pleadings. On December 7, 1992, at the outset of trial, the City made a motion for judgment on the pleadings on the grounds that the first, third, fourth, fifth and sixth causes of action of Ponderosa's petition and complaint were barred by an applicable statute of limitations. The trial court granted the motion, finding as follows: "It appears both from the verified petition/complaint and from the Stipulation of Agreed Facts submitted to the court that the first, third, fifth and sixth causes of action are barred by the 180 day limitations period of Government Code § 66020 and that the fourth cause of action is barred by the one year limitations period applicable to a civil rights action brought under 42 U.S.C. § 1983. In making this determination, the court finds that the applicable limitations period as to each aforementioned cause of action commenced on April 26, 1988, upon tentative subdivision map approval." The trial court entered judgment for the City, and this appeal followed.

## II. DISCUSSION

This appeal is from a decision granting a motion for judgment on the pleadings. The motion was granted solely on the basis of the trial court's decision that each of the relevant causes of action in the complaint was barred by a statute of limitations. The trial court did not reach the substantive merits of the controversy between the parties. Thus, the issue before us is limited to the propriety of the trial court's decision with respect to the running of the applicable statute of limitations.

A motion for judgment on the pleadings may be made either prior to trial or at trial, on the same grounds as could be urged by a general demurrer. (*Stockton Newspapers, Inc.* v. *Redevelopment Agency* (1985) 171 Cal.App.3d 95, 99 [214 Cal.Rptr. 561]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 262, pp. 563-564.) Like a demurrer, the motion is confined to the face of the pleading under attack, and the plaintiff's allegations are accepted as true. (*Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 954-955 [237 Cal.Rptr. 738]; *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 815, 825 [195 Cal.Rptr. 421]; *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675-676 [138 Cal.Rptr. 338]; 6 Witkin, Cal. Procedure, Proceedings Without Trial, *supra,*

§ 263, pp. 564-565.) The standard of review is the same as on a judgment following the sustaining of a demurrer. (*April Enterprises, Inc., supra,* at pp. 815, 825; *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 957 [166 Cal.Rptr. 233]; *Baillargeon, supra,* at pp. 675-676.)

■ When a complaint shows on its face or on the basis of judicially noticeable facts that the cause of action is barred by the applicable statute of limitations, the plaintiff must plead facts which show an excuse, tolling, or some other basis for avoiding the statutory bar. (*Grange Debris Box & Wrecking Co.* v. *Superior Court* (1993) 16 Cal.App.4th 1349, 1359-1360 [20 Cal.Rptr.2d 515].) ■ In this case, the trial court relied solely on Ponderosa's petition and complaint, together with the statements of undisputed facts submitted by the parties, as to which they waived their rights to have a determination at trial. These facts were properly considered by the trial court in making its determination that each of Ponderosa's challenges to the traffic mitigation fee was barred by an applicable statute of limitations. (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 224, 227 [236 Cal.Rptr. 285].)

Protests against the imposition of fees, dedications or other exactions by a local agency on a residential housing development are governed by section 66020. Section 66020, subdivision (a) provides that any party may protest the imposition of such fees by (1) tendering the required payment in full or providing satisfactory evidence of arrangements to ensure performance of any required condition; and (2) serving written notice on the governing body of the local agency, stating that the payment is made under protest and setting forth the factual and legal grounds for the protest.[3]

Section 66020, subdivision (d) sets forth a two-tiered limitations period for such a protest. First, a protest must be filed "at the time of approval or conditional approval of the development or within 90 days after the date of the imposition of the fees, dedications, reservations, or other exactions to be imposed on a residential housing development." Once a protest is filed, "an

---

[3]Section 66020, subdivision (a) provides as follows:

"(a) Any party may protest the imposition of any fees, dedications, reservations, or other exactions imposed on a residential housing development by a local agency by meeting both of the following requirements:

"(1) Tendering any required payment in full or providing satisfactory evidence of arrangements to ensure performance of the conditions necessary to meet the requirements of the imposition.

"(2) Serving written notice on the governing body of the entity, which notice shall contain all of the following information:

"(A) A statement that the required payment is tendered, or that any conditions which have been imposed are provided for or satisfied, under protest.

"(B) A statement informing the governing body of the factual elements of the dispute and the legal theory forming the basis for the protest."

action to attack, review, set aside, void, or annul the imposition of the fees" may be filed "within 180 days after the date of the imposition. Thereafter, notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition." Under section 66020, subdivision (g), "[a]pproval or conditional approval of a development" is defined as occurring "when the tentative map, tentative parcel map, or parcel map is approved or conditionally approved . . . ." Finally, "imposition of fees" occurs "when they are imposed or levied on a specific development." (§ 66020, subd. (h).)[4]

The trial court found the 180-day period set forth in this statute was applicable to the first, third, fifth and sixth causes of action of Ponderosa's petition and complaint, and that the one-year statute of limitations for civil rights actions was applicable to the fourth cause of action. In addition, the trial court found that the limitations periods for both statutes commenced to run on April 26, 1988, the date the City gave Ponderosa's project tentative subdivision map approval and imposed the traffic mitigation fee condition. Because Ponderosa did not file its lawsuit until December 4, 1991, each cause of action was barred by an applicable statute of limitations.

■ On appeal, Ponderosa argues that the statute did not commence to run until it actually paid the challenged fee. Under Ponderosa's interpretation of the statute, it did not even have to lodge any protest to the traffic mitigation fee condition until three months (ninety days) had passed after it first paid the traffic mitigation fee on a phase of its development project. The key question, therefore, is whether the "imposition of fees" in this case occurred when the City first set the traffic mitigation fees as a condition on its tentative subdivision map approval, or when Ponderosa paid an installment on the fees already required by the City.

---

[4]The limitations provisions of section 66020 provide in pertinent part as follows:

"(d)   A protest filed pursuant to subdivision (a) shall be filed at the time of approval or conditional approval of the development or within 90 days after the date of the imposition of the fees, dedications, reservations, or other exactions to be imposed on a residential housing development. Any party who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void, or annul the imposition of the fees, dedications, reservations, or other exactions imposed on a residential housing development by a local agency within 180 days after the date of the imposition. Thereafter, notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition. . . .

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(g)   Approval or conditional approval of a development occurs, for the purposes of this section, when the tentative map, tentative parcel map, or parcel map is approved or conditionally approved or when the parcel map is recorded if a tentative map or tentative parcel map is not required.

"(h)   The imposition of fees, dedications, reservations, or other exactions occurs, for the purposes of this section, when they are imposed or levied on a specific development."

Ponderosa argues that section 66020 makes an express distinction between "the time of approval or conditional approval of the development," on the one hand, and "the date of the imposition" of the fee on the other, by equating "approval or conditional approval" with tentative subdivision map approval, and "imposition" with the act of imposing or levying a fee on a specific development. Ponderosa urges that because the statute provides that a developer may file a protest *either* at the time of conditional approval *or* within 90 days after imposition of fees, the Legislature must have intended to give developers the option of waiting to file their protest until they actually pay the levied fee. In addition, Ponderosa contends that no cause of action can accrue at all until the challenged fee is paid, because section 66020, subdivision (a) establishes as the two prerequisites for a fee protest both the tender of the required payment in full and written notice that the payment is being tendered under protest.

We disagree with Ponderosa's analysis. The phrase "to impose" is generally defined to mean to establish or apply by authority or force, as in "to impose a tax." (Webster's Third New Internat. Dict. (1970) p. 1136.) There is a logical distinction between the act of imposing something and the act of complying with that which has been imposed. As applicable here, the phrase refers to the *creation* of a condition or fee by authority of local government; it is not synonymous with the act of *complying* with that condition or fee. Just as creation is different from compliance, so is "imposition" of a fee different from payment thereof.

The statutory definition of "imposition of fees" does not contradict this interpretation. Section 66020, subdivision (h) states that "imposition of fees, dedications, reservations, or other exactions occurs . . . when they are imposed or levied on a specific development." The statute does not say that imposition occurs "when they are paid or complied with." Although "to levy" may in context mean "to collect," the word refers to the action of the governmental agency, not the action of the party subject to that which is levied. Thus, as with the phrase "to impose," "to levy" does *not* mean "to pay." (Webster's Third New Internat. Dict., *supra*, p. 1301.)

Contrary to Ponderosa's argument, the fact that section 66020 distinguishes between the time of tentative map approval and the time of "imposition of fees" does not imply that the latter takes place when the fees are paid rather than when the local agency first establishes them as a condition on approval. Different agencies and localities may impose fees at different times, and not always at the same time as the development is approved or conditionally approved. Fees may be imposed—that is, required by authority of government—before or after tentative map approval. In this case, the fee

happened to be imposed at the same time as tentative subdivision map approval. Ponderosa's subsequent payment of the fee in connection with processing the phased final maps simply constituted the satisfaction of the condition already imposed earlier.

Neither does the interpretation of the limitations period adopted by the trial court contradict the language of section 66020, subdivision (a). That subdivision requires that anyone protesting "the imposition of any fees" on a development must first tender any required payment *or* provide "satisfactory evidence of arrangements to ensure performance of the conditions necessary to meet the requirements of the imposition."

Contrary to Ponderosa's contention, this subdivision does not establish that no cause of action can arise under section 66020—and no statute of limitation can commence to run—until the fee has been paid. ■ Instead, subdivision (a) requires *either* a tender of payment *or* a satisfactory guarantee of future payment at the time of any protest of the imposition of a fee. Under subdivision (d), it is just such a protest which must be filed either at the time of approval or conditional approval of the development, *or* "within 90 days after the date of the imposition of the fees." Thus, subdivision (a) requires there to be a tender of payment or a guarantee at the time of any protest of "the imposition of any fees"; subdivision (d) in turn requires that the protest be made within 90 days of "the imposition of the fees," that a protest be made prior to filing an action to attack the imposition of the fees, and that any action be brought "within 180 days after the date of the imposition." The statutory scheme ensures that a protesting developer tenders or bonds for the required fee at the time of protest, and that a protest be made before the developer's cause of action accrues.

Under Ponderosa's interpretation of the statute, a developer may wait to file a protest until three months *after* payment of a *part* of the fees earlier imposed, even though the language of the statute clearly requires tendering (or guaranteeing) of the entire fee at the time of the protest itself. For "imposition of fees" to be equivalent to payment of fees, as Ponderosa contends, that term would have to have been employed differently in subdivisions (a) and (d) of section 66020. One cannot be both required to pay a fee at the time of making a protest, and permitted to wait three months after paying the fee to make the same protest.

There is no merit to Ponderosa's further contention that the trial court's reading of the statute is unfair or unduly burdensome to developers. Under the interpretation adopted by the trial court, a developer would either have to tender payment of the fees imposed *or* provide "satisfactory evidence of

arrangements to ensure performance of the conditions necessary to meet the requirements of the imposition." (§ 66020, subd. (a)(1).) Thus, the developer would not actually be required to pay the full amount in order to protest as long as it could satisfactorily guarantee future payment.

■ With regard to the statute of limitations applicable to Ponderosa's fourth cause of action raising civil rights claims under 42 United States Code section 1983, the limitations period for such an action is one year. (Code Civ. Proc., § 340, subd. (3); *Norco Const., Inc.* v. *King County* (9th Cir. 1986) 801 F.2d 1143, 1145; *McMillan* v. *Goleta Water Dist.* (9th Cir. 1986) 792 F.2d 1453, 1456.) This one-year period runs from the same event as that which triggers the running of the one-hundred-eighty-day period set by section 66020, subdivision (d), that is, the imposition of the fees of which Ponderosa complains. Civil rights claims under 42 United States Code section 1983 are ripe for adjudication when the government agency has arrived at a definitive position on an issue that inflicts an actual concrete injury. (*Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172, 193-194 [87 L.Ed.2d 126, 143-144, 105 S.Ct. 3108]; *St. Clair* v. *City of Chico* (9th Cir. 1989) 880 F.2d 199, 202-204.) This occurred when the local agency actually imposed the fee requirement on Ponderosa in this case, which was at the time of tentative subdivision map approval. Ponderosa's petition and complaint were filed more than one year after the imposition of the fees at issue. Therefore, this cause of action is also time barred.

Ponderosa cites the case of *Anza Parking Corp.* v. *City of Burlingame* (1987) 195 Cal.App.3d 855 [241 Cal.Rptr. 175] to argue that there is essentially no statute of limitations on claims that a given condition on a land use permit is unconstitutional, void and unlawful. *Anza*, which has never been relied upon by any other appellate court decision on this point, is factually distinguishable from this case. There, the Court of Appeal held that the local agency did not have any subject matter jurisdiction to impose the kind of condition it was attempting to impose, or to interfere with the property rights at issue in that case. In contrast, here there is no dispute that the City has the power to impose a traffic impact mitigation fee and to condition approval of the subdivision map on payment of such a fee. Ponderosa only challenges the amount of the fee imposed here, and the manner in which the City imposed it. Ponderosa's claims are therefore subject to each applicable statute of limitations. (*California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488, 1501 [258 Cal.Rptr. 567].)

Ponderosa raises several substantive issues not addressed by the trial court. Because of our decision that the trial court properly granted the motion for judgment on the pleadings on the basis of the running of each applicable statute of limitations, we need not address any of these issues.

The judgment is affirmed.

White, P. J., and Werdegar, J., concurred.