Opinion
HULL, J.
After first contracting with plaintiff Civic Partners Stockton, LLC, for the renovation of a historic hotel in downtown Stockton, the redevelopment agency for the City of Stockton (the Agency) entered into a new redevelopment agreement with defendant Hotel Stockton Investors (HSI) for the same property. Plaintiff brought this action against the Agency, the City of Stockton (City), and HSI for breach of contract and related claims. Also named as defendants were Cyrus Youssefi (Youssefi) and his company, CFY Development (CFY), the general partner of HSI. (Hereafter, Youssefi, CFY and HSI shall be referred to collectively as the Youssefi defendants.)
The City and the Agency demurred, and the trial court overruled the demurrers. However, this court granted the City and the Agency’s petition for writ of mandate and directed the trial court to sustain the demurrers on the basis of plaintiff’s failure to comply with the Government Claims Act (Gov. Code, § 900 et seq.). Our decision was later affirmed by the California Supreme Court. (City of Stockton v. Superior Court (2007) 42 Cal.4th 730 [68 Cal.Rptr.3d 295, 171 P.3d 20] (City of Stockton).)
The present matter involves plaintiff’s claims against the Youssefi defendants. The trial court granted the Youssefi defendants’ motions for judgment on the pleadings on plaintiff’s first cause of action for conversion of architectural plans, concluding such claim was preempted by federal copyright law. The court also granted summary adjudication on all remaining claims and entered judgment of dismissal. Plaintiff appeals, contending the trial court erred as to each claim and further erred in refusing to grant plaintiff leave to amend.
We conclude the trial court erred in granting judgment on the pleadings on the first cause of action and therefore reverse the judgment of dismissal. The first cause of action is not one for copyright infringement but for conversion of a particular object in which a copyrightable work is imbedded. It is therefore not preempted by federal copyright law. However, we reject plaintiff’s remaining contentions on appeal and conclude the trial court properly granted summary adjudication on all remaining claims.
*1009 Facts and Proceedings
Because the trial court granted the Youssefi defendants’ motion for judgment on the pleadings on the first cause of action, we accept as true the allegations of the complaint on that claim for purposes of this appeal. (American Airlines, Inc. v. County of San Mateo (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198].) On all other claims, the trial court granted summary adjudication. We therefore review the evidence on those claims in the light most favorable to plaintiff. (Molko v. Holy Spirit Assn. (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) For some of file facts not in dispute and a portion of the procedural background of this matter, we refer to the prior decision of the California Supreme Court in this matter.
On or about May 2, 2000, the Agency entered into an agreement with plaintiff (the Civic Agreement) for renovation of the Hotel Stockton (Hotel), a historic building at 133 East Weber Avenue in Stockton, California, containing five stories, an underground basement, and 178,000 square feet of space. Under the terms of the Civic Agreement, the Agency agreed to sell the Hotel to plaintiff for $1, provided plaintiff fulfilled all of its conditions and obligations under that agreement. Concurrently with the Civic Agreement, the City entered into an agreement to lease 65,000 square feet of office space in the Hotel.
In late 2000 and early 2001, plaintiff entered into negotiations with Paramount Financial Group, Inc. (Paramount), for a joint venture to develop business office space in the Hotel. However, the parties never finalized those negotiations into an agreement. Paramount nevertheless loaned plaintiff and two others $743,000 to fund early expenses associated with the renovation work.
The City later repudiated the lease for office space and demanded that plaintiff find another use for the upper floors of the Hotel. (City of Stockton, supra, 42 Cal.4th at p. 734.) The City proposed senior housing, which required redesign of the Hotel’s interior and a change in the financing arrangement to include federal and state tax credits. (Ibid.) By the end of 2001, plaintiff had completed new plans for the Hotel and other work needed to apply for the tax credits, at a cost of several hundred thousand dollars. (Ibid.)
In January 2002, the City informed plaintiff it wanted the Youssefi defendants to take over the upper floors in the Hotel, the senior housing, and the tax credit application. (City of Stockton, supra, 42 Cal.4th at p. 735.) The Agency began negotiating with plaintiff over how to protect plaintiff’s *1010 interests upon such reassignment. (Ibid.) In February 2002, the Agency entered into an agreement with plaintiff whereby plaintiff would turn over to the Agency a reproducible copy of its plans for the Hotel renovation project subject to the following understanding: “First, the plans are the property of [plaintiff]. Second, the plans can only be used by the [Agency], City or others subject to an agreement between the Agency and [plaintiff] regarding the future renovation of the Hotel (including reimbursement of costs to date), as well as a cooperative agreement between the Agency and [plaintiff] regarding other components of the Channel Head project (including the cinema and B&M Building).”
In March 2002, the Agency entered into a development agreement with HSI (the HSI Agreement) for renovation of the Hotel. Under the HSI Agreement, development of the property was to include 140 senior residence units. The HSI Agreement also provided that, upon completion of all development work and fulfillment of all other obligations under the agreement, the Hotel would be sold to HSI for $950,000.
On July 9, 2002, the Agency and HSI amended the HSI Agreement to provide for the creation of 156 affordable residential units rather than senior housing units. Also in 2002, Paramount entered into an agreement with HSI for development of the Hotel. The Hotel was eventually renovated by HSI into a single-room-occupancy apartment house.
In January 2003, plaintiff filed suit against the City, the Agency and the Youssefi defendants for declaratory relief to establish its rights in the Hotel plans and for damages for breach of and interference with its contracts with the Agency and the City. The City and the Agency demurred and the trial court sustained the demurrer on the following grounds: (1) plaintiff’s rights in the Hotel plans are governed by federal copyright law and within the exclusive jurisdiction of the federal courts, (2) the City was not a party to the Civic Agreement, and (3) the agreement with the Agency cannot support a claim because the statutory requirements for public contracting had not been met. (City of Stockton, supra, 42 Cal.4th at p. 736.)
Plaintiff thereafter amended the complaint and the City and the Agency again demurred. The trial court sustained the demurrers on the breach of contract claims based on uncertainty as to the form of the various contracts. On the declaratory relief claim, the court sustained the demurrer without leave to amend based on federal copyright preemption. (City of Stockton, supra, 42 Cal.4th at p. 736.)
Plaintiff filed a second amended complaint that excluded the declaratory relief claim. The City and the Agency again demurred, this time on the *1011 additional basis that plaintiff failed to satisfy the requirements of the Government Claims Act. (City of Stockton, supra, 42 Cal.4th at pp. 736-737.) The trial court overruled the demurrer, concluding the contract claims were sufficiently certain and the Government Claims Act does not apply to contract claims. (City of Stockton, at p. 737.) The City and the Agency then filed a cross-complaint against plaintiff for breach of contract, misrepresentation and failure of consideration. They also filed a petition for writ of mandate with this court, seeking to overturn the order overruling their demurrers. (Ibid.)
This court granted writ relief, concluding plaintiff’s claims are subject to the Government Claims Act, which plaintiff failed to satisfy. However, we further concluded that, if the City and the Agency continue to pursue their cross-complaint, plaintiff may file a cross-complaint of its own asserting defensive claims. (City of Stockton, supra, 42 Cal.4th at p. 737.) The California Supreme Court granted plaintiff’s petition for writ of review and affirmed. (Id. at pp. 737, 748.) However, the high court modified our decision to include directions to the trial court to grant plaintiff leave to amend and to omit directions to permit plaintiff to file a cross-complaint. (Id. at p. 748.)
On March 17, 2008, plaintiff filed a third amended complaint containing eight causes of action: (1) restitution for conversion of the Civic Agreement; (2) restitution for conversion of the Hotel plans prepared at plaintiff’s expense; (3) restitution for conversion of a tax credit partnership between plaintiff and Paramount; (4) restitution for the value of a related cinema lease; (5) inverse condemnation of the Civic Agreement; (6) inverse condemnation of the cinema lease; (7) conversion of the B&M contract mentioned in the February 2002 agreement between plaintiff and the Agency; and (8) declaratory relief. The fourth through seventh causes of action were stated against the City and the Agency alone.
The Youssefi defendants demurred to the third amended complaint. The trial court overruled the demurrers to the first through third causes of action but sustained the demurrer to the eighth cause of action for declaratory relief without leave to amend. Among other things, the court concluded the second cause of action for conversion of the Hotel plans is not preempted by federal copyright law. The Youssefi defendants thereafter filed an answer to the third amended complaint.
On November 24, 2008, plaintiff filed a fourth amended complaint containing just three causes of action: (1) restitution for conversion of the Hotel plans; (2) restitution for conversion of the Paramount partnership; and (3) restitution for conversion of the Civic Agreement.
*1012 On April 15, 2009, the trial court sustained demurrers of the City and the Agency to the fourth amended complaint and ordered dismissal of the action as to those defendants.
On October 25, 2010, the trial court granted the Youssefi defendants’ motion for judgment on the pleadings as to the first cause of action, concluding that claim is preempted by federal copyright law. The court also denied leave to amend, concluding plaintiff failed to demonstrate it could allege facts sufficient to state a claim.
On December 21, 2010, the trial court granted the Youssefi defendants’ motion for summary adjudication on the remaining claims. The court also denied plaintiff’s request for leave to amend. On the second cause of action, for conversion of the alleged partnership with Paramount, the court concluded plaintiff admitted no such partnership ever came into existence. Hence, there could have been no conversion of that which did not exist. On the third cause of action, for conversion of the Civic Agreement, the court concluded a contract cannot be the subject of a conversion claim. The court further concluded there could be no conversion of the contract because the terms of the HSI Agreement were significantly different from those of the Civic Agreement. Thus, according to the court, “whatever contract rights [plaintiff] allegedly had, such rights were not transferred to” the Youssefi defendants in their contract with the Agency.
On January 25, 2011, the trial court entered judgment for the Youssefi defendants. Plaintiff appeals.
Discussion
I, IT*
III

Copyright Exclusivity

The trial court granted judgment on the pleadings on the first cause of action of the fourth amended complaint. A motion for judgment on the pleadings is subject to the same rules governing a general demurrer. (Ponderosa Homes, Inc. v. City of San Ramon (1994) 23 Cal.App.4th 1761, 1767 [29 Cal.Rptr.2d 26].) The court must accept as true the allegations of *1013 the challenged pleading and all matters subject to judicial notice. (American Airlines, Inc. v. County of San Mateo, supra, 12 Cal.4th at p. 1118.) Like a demurrer, the grounds for the motion must appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice. (Code Civ. Proc., § 438, subd. (d); Evans v. California Trailer Court, Inc. (1994) 28 Cal.App.4th 540, 548 [33 Cal.Rptr.2d 646]; Ponderosa Homes, Inc., supra, 23 Cal.App.4th at p. 1767.) On appeal, we review the judgment on the pleadings de novo, applying the same test applied by the trial court. (Gerawan Farming, Inc. v. Lyons (2000) 24 Cal.4th 468, 515-516 [101 Cal.Rptr.2d 470, 12 P.3d 720]; Rolfe v. California Transportation Com. (2002) 104 Cal.App.4th 239, 242 [127 Cal.Rptr.2d 871].)
In the first cause of action, plaintiff waives its tort claim for conversion of the architectural plans for the Hotel and seeks restitution for its investment in those plans and any profits obtained by the Youssefi defendants from the Hotel renovation project. “ ‘There are several potential bases for a cause of action seeking restitution. For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason. [Citations.] Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory .... [Citations.] In such cases, where appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties’ intent, in order to avoid unjust enrichment.’ [Citation.]” (Durell v. Sharp Healthcare (2010) 183 Cal.App.4th 1350, 1370 [108 Cal.Rptr.3d 682].)
The fourth amended complaint alleges that, in January 2002, plaintiff was in the process of preparing an application for federal and state tax credits for elderly housing on the upper floors of the Hotel. However, that same month, the Agency told plaintiff it “wished to substitute Cyrus Youssefi and his company for [plaintiff] in the upper floors of the [H]otel.” According to the complaint, the Agency informed plaintiff that it needed the latter’s consent for such substitution and that, in exchange, the Agency would pay plaintiff for its investment in the Hotel.
The complaint further alleges that, on February 19, 2002, the Agency asked plaintiff for its Hotel architectural plans “which the [A]gency wished to give Mr. Youssefi for his use in his [H]otel tax credit application.” According to the complaint, “[plaintiff] transferred the plans in trust to the [A]gency on that day, pending the [A]gency’s formal agreement to restore [plaintiff’s] investment.” The Agency signed an agreement providing that the plans are the property of plaintiff and can be used by the Agency, the City or others *1014 subject to an agreement with plaintiff that included reimbursement of costs incurred by plaintiff to date.
According to the complaint, the Agency thereafter transferred plaintiff’s Hotel renovation contract “to Mr. Youssefi and his company.” In addition, “[t]he [Ajgency gave [plaintiff’s] plans to Youssefi without [plaintiff’s] consent in violation of the” February agreement described above. Youssefi’s architects then used the plans to prepare Youssefi’s application for tax credits. Plaintiff alleges that Youssefi and his attorney, Patrick Sabelhaus, knew that when Youssefi “used [plaintiff’s] plans to make Youssefi’s tax credit application on March 25, 2002 that the [A]gency had not honored the commitments the [A]gency, Youssefi, and Sabelhaus had made . . . .”
The trial court granted the Youssefi defendants’ motion for judgment on the pleadings on the first cause of action, concluding the court had no subject matter jurisdiction over such claim because it is based on federal copyright law. According to the court: “[T]he Fourth Amended Complaint alleges that the Agency made a deal with [plaintiff] to obtain a copy of [plaintiff’s] architectural plans; that the Agency then provided a copy of the plans to the Youseffi [.sic] defendants; and that the Youseffi [sic] defendants used the copy of [plaintiff’s] architectural drawings to prepare part of a tax credit application. The allegations are therefore for wrongful use of the plans, through copying, display and/or use of the plans to prepare the tax credit application. . . . Such allegations clearly assert legal and equitable rights that are equivalent to the exclusive rights within the general scope of copyright. . . .”
On plaintiff’s argument that it is not alleging the copying of copyrighted material but the conversion of a given representation of that material, the court explained: “[P]laintiff sought to avoid the foregoing conclusion [of copyright preemption] by asserting that in 17 U.S.C. [section] 202, a distinction is drawn between ownership of the copyright and ownership of any material object in which the copyrightable work is imbedded. Using the example of a coffee cup with a hotel chain’s logo embedded thereon, plaintiff contended that an action for conversion of the cup would not be preempted by federal copyright law simply because the item converted (the cup) contained a copyrighted logo on its face.
“The argument proves too much[.] In this case plaintiff does not assert conversion of the paper on which the copyrightable work is printed[.] To the contrary, plaintiff’s complaint specifically alleges that [plaintiff] caused the preparation of the hotel plans [;] that [plaintiff] transferred the plans to the Agency ‘in trust;’ that the tax credit application required an accurate set of plans; and that the Youseffi [sic] defendants used [plaintiff’s] architectural drawings to prepare part of the tax credit application^] As noted above, the *1015 alleged wrong was therefore accomplished through the wrongful copying, display and/or use of the plans as such to prepare the tax credit application. [Citation.] To construe such a claim as outside the reach of federal preemption would defeat the intent of Congress to create a uniform national copyright law protecting reproduction, performance, distribution, and display of copyrightable works. [Citation.]”
Plaintiff contends the trial court erred in concluding the first cause of action is preempted by federal copyright law. Federal preemption has been recognized in three general areas: (1) where the federal law expressly so states, (2) where the federal law is so comprehensive that it leaves “ ‘ “no room” for supplementary state regulation,’ or (3) where the federal and state laws ‘actually conflict[].’ [Citation.]” (Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 567 [59 Cal.Rptr.2d 186, 927 P.2d 296].) As to the latter, an actual conflict arises “when ‘compliance with both federal and state regulations is a physical impossibility,’ [citation], or when state law ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ....’” (Fidelity Federal Sav. & Loan Assn. v. de la Cuesta (1982) 458 U.S. 141, 153 [73 L.Ed.2d 664, 675, 102 S.Ct. 3014].)
“[17 United States Code] [s]ection 301(a)[, part] of the [1976 Copyright Act (the Act)] expressly preempts state laws that protect ‘legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [section 106].’ [Citation.] Section 301(b) represents the obverse of subsection (a), allowing states to regulate ‘activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by [section 106].’ [Citation.] The Act does not preempt all state common law affecting copyright material, but only state common law meeting two conditions. [Citation.] ‘Thus, for preemption to occur under the Act, two conditions must be met: first, the subject of the claim must be a work fixed in a tangible medium of expression and come within the subject matter or scope of copyright protection . . . , and second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106.’ [Citations.]” (Kabehie v. Zoland (2002) 102 Cal.App.4th 513, 520 [125 Cal.Rptr.2d 721], fn. omitted.)
In the present matter, it is undisputed the first condition is met. The architectural plans are a work fixed in a tangible medium that falls within the scope of copyright protection. The issue here is whether the right asserted in the first cause of action is equivalent to the exclusive rights contained in federal copyright law.
Plaintiff contends that, because it is not the holder of the copyright for the architectural plans, its claim stemming from use of those plans by the *1016 Youssefi defendants cannot be subject to copyright preemption. According to plaintiff, only the copyright holder, i.e., the architect, can sue for copyright infringement. As in the court below, plaintiff relies on 17 United States Code section 202, which reads: “Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.”
Plaintiff argues the court below mistook its claim as one based on taking of the paper on which the architectural plans were drawn. However, plaintiff argues, it “did not pay several hundred thousand dollars for paper; it paid for plans.” Nevertheless, in purchasing the plans, plaintiff did not purchase the copyright. That remained with the architect. Thus, plaintiff argues, its claim is not one for copyright infringement.
The Youssefi defendants counter that, however characterized by plaintiff, the gist of the claim is that the Youssefi defendants improperly reproduced and distributed the architectural plans as part of their credit application, and such claim falls within the exclusive ambit of federal copyright law. As for plaintiff’s claim that its action cannot be for copyright violation because plaintiff is not the copyright holder, the Youssefi defendants assert that “courts regularly apply [cjopyright pre-emption against plaintiffs who do not own the copyright of the work in dispute.” (See Fleet v. CBS, Inc. (1996) 50 Cal.App.4th 1911, 1913, 1916 [58 Cal.Rptr.2d 645]; Laws v. Sony Music Entertainment, Inc. (9th Cir. 2006) 448 F.3d 1134, 1135-1136, 1142-1143.) The Youssefi defendants argue copyright law does not preempt certain individuals, i.e., copyright holders, but certain causes of action, i.e., those based on rights encompassed by the copyright act.
Plaintiff disagrees that federal copyright law preempts claims asserted by anyone other than the copyright holder. It cites Silvers v. Sony Pictures Entertainment, Inc. (9th Cir. 2005) 402 F.3d 881 at page 884, which includes the following quote from a treatise on commercial litigation in federal court: “ ‘If a claimant is not a proper owner of copyright rights, then it cannot invoke copyright protection stemming from the exclusive rights belonging to the owner, including infringement of the copyright.’ ” (Accord, Smith v. Jackson (9th Cir. 1996) 84 F.3d 1213, 1218 [“To establish a successful copyright infringement claim, a plaintiff must show that (1) she owns the copyright, and (2) defendant copied protected elements of the copyrighted work.”].)
*1017 The fact that one may not successfully sue for copyright infringement because he or she is not the copyright holder does not mean he or she is not preempted from attempting to sue on a claim that amounts to copyright infringement. As argued by the Youssefi defendants, it is the nature of the action not the identity of the plaintiff that controls. If one sues another for making unauthorized copies of a protected work, and the alleged basis for precluding such copying is that the work is protected by copyright, then that action is subject to copyright preemption. The federal court has exclusive jurisdiction to decide who is entitled to enforce the copyright.
Nevertheless, we agree with plaintiff that its claim in the first cause of action does not fall within the exclusive ambit of federal copyright law. The trial court suggested plaintiff’s claim is not one for conversion of the paper on which a copyrightable work is printed. That is true. However, the court went on to conclude the claim must therefore be for infringement of the copyrightable work. However, there is a third option. Using the coffee cup analogy, an action can be for conversion of a plain cup, for conversion of a cup with a protected hotel logo on it, or for infringement of the copyright for the hotel logo. The fact that one may not be suing for conversion of a plain cup does not thereby mean the suit is for infringement of the copyright for the logo thereon. It may instead be for conversion of a cup whose value is enhanced by the presence of the logo.
In the present matter, plaintiff is not suing the Youssefi defendants for conversion of a plain piece of paper. Nor is plaintiff suing them for having copied or used the architectural plans in violation of the architect’s copyright. Rather, plaintiff is suing for conversion of a particular object on which the copyrighted work is embodied. As alleged in the fourth amended complaint, plaintiff obtained a copy of the architectural plans from the architect, the copyright owner, for use in plaintiff’s credit application. That copy was then given to the Agency which in turn gave it to the Youssefi defendants. The latter used the copy of the architectural plans to prepare part of its own credit application for the same building project. Thus, the copy of the plans was used as the architect intended, but by a different party. This does not state a claim for copyright violation but for conversion of a particular object containing a copyrightable work. (See 17 U.S.C. § 202.) We therefore conclude the trial court erred in granting judgment on the pleadings on the first cause of action of the fourth amended complaint on the basis of federal copyright preemption.
IV, V*
*1018 Disposition
The judgment is reversed and the matter is remanded to the trial court with directions to vacate its order granting and enter a new order denying the Youssefi defendants’ motion for judgment on the pleadings on the first cause of action of the fourth amended complaint. Summary adjudication on the remaining claims of the fourth amended complaint is affirmed. Defendants’ request for judicial notice of former Local Rule 6.01 (as it existed in 2010) of the Superior Court of Sacramento County is denied as irrelevant to the issue that resolves the case on appeal. In light of the mixed result achieved in this matter, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)
Duarte, J., concurred.

See footnote, ante, page 1005.

See footnote, ante, page 1005.